IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION FILE NO. |
| v. | 1:16-CR-145-TWT-JKL-38 |
| ANTHONY BLAINE | |

**NON-FINAL REPORT AND RECOMMENDATION**

Pending before the Court is Defendant Anthony Blaine's Motion to Suppress Statements from Interview in which he seeks to suppress statements he made to law enforcement following his arrest on November 5, 2018. [Doc. 2097.] For the following reasons, it is **RECOMMENDED** that the motion be **DENIED**.

**I.   BACKGROUND**

On October 24, 2018, a federal grand jury seated in the Northern District of Georgia returned a second superseding indictment in this case charging Blaine with a single count of RICO conspiracy. [Doc. 1750.] The indictment alleges that Blaine was a member of the Gangster Disciples, which the government alleges operated as a racketeering enterprise as defined by 18 U.S.C. § 1961(4). [*Id.* at 6-8.] It is further alleged that during the time period relevant to this case Blaine served in various leadership roles within the organization, including First

Coordinator for the Northside Count, Region for the state of Georgia, Assistant Governor of Georgia, and Governor of Georgia.[1]  [*Id.* at 14.]  The indictment alleges in furtherance of the alleged conspiracy, Blaine and co-defendant Mangwiro Sadiki-Yisrael caused fraudulent transactions to occur that resulted in more than $77,805 being deposited into at least six accounts controlled by Blaine and held in his name and the names of others.  [*Id.* at 20-21 (Overt Act 15).]

According to Blaine, after he learned about the second superseding indictment, he contacted the U.S. Marshals Service at least four times on November 1 and November 2, 2018 in an effort to obtain information about the arrest warrant and the procedure for self-surrendering.  [Doc. 2097 at 2-4.]  He was repeatedly placed on hold "until he disconnected the calls due to extreme wait-time."  [*Id.* at 3.]  Apparently, on November 2, 2018, he managed to speak to someone at the U.S. Marshals Service in the Northern District of Georgia, to whom he conveyed "information regarding self-surrender."  [*Id.* at 3-4.]  Then, according to Blaine, the U.S. Marshals Service "advertently or inadvertently" shared the information to the

---

[1] The indictment alleges that members of the Gangster Disciples are organized in geographic groups, each called a "count" or a "deck."  [Doc. 1750 at 2-3.]  A "Region" or "Regent" is responsible for several counts within a state, and a "Governor" coordinates gang activity within a state.  [*Id.* at 3-5.]

2

agents in charge of the investigation, who arrested Blaine on November 5, 2018.[2] [*Id.* at 4.]

After his arrest, agents transported Blaine to a "federal office" and interviewed him before his initial appearance and appointment of counsel. [Doc. 2097 at 4.] Unaccompanied by a lawyer, Blaine was provided *Miranda*[3] warnings. Blaine does not contest that he voluntarily and knowingly waived his rights. [*Id.* at 5, 7; *see also* Doc. 2154 at 8-9 (recognizing that the issue before the Court is the adequacy of Blaine's waiver, but instead the purported effort by the government to arrest Blaine knowing his desire to self-surrender and thereby deny him his right to counsel).] Blaine had no counsel at the time of his arrest. [*See* Doc. 2154 at 3-4.]

On January 22, 2019, Blaine moved to suppress his post-arrest statements. [Doc. 2097.] He argues that his statements should be suppressed because the government violated his Sixth Amendment right to counsel by arresting and interrogating him, knowing full well that he wished to self-surrender. [*Id.* at 4-5.] The assumptions underlying Blaine's argument are that law enforcement knew he would "immediately" have counsel appointed if he self-surrendered, but the agents

---

[2] Blaine has not described the specific circumstances of his arrest in his motion or his reply brief.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

felt they would have a better opportunity to secure his cooperation without the interference of his defense attorney. [*Id.* at 5-6.] So, they arrested him—rather than directing him to self-surrender—in order to interview him before he had the assistance of counsel. [*Id.*] As Blaine puts it:

> [T]he sequence of events dictated by the agents and methods used by them were calculated to isolate Mr. Blaine from both counsel and the Court in order to more easily pursue cooperation, in violation of his right to counsel under the Sixth Amendment to the United States Constitution.

[*Id.* at 7.]

The government responds that, even accepting as true Blaine's version of the facts, Blaine's arrest and subsequent interrogation did not violate his Sixth Amendment right to counsel. [Doc. 2148 at 2-3.] The government contends that arresting a defendant instead of allowing him to self-surrender does not implicate the Sixth Amendment and points out that there is no authority supporting Blaine's contention that the arrest was so compulsive or coercive that it negated Blaine's otherwise valid *Miranda* waiver. [*Id.* at 2148 at 4-5.]

In his reply, Blaine argues that the Sixth Amendment violation occurred before the *Miranda* warning and was "irrevocably complete the moment *Miranda* warnings were given and custodial interrogation began." [Doc. 2154 at 2.] Blaine further argues that since agents knew that he wished to self-surrender, they should

have taken him to a magistrate judge immediately where counsel would be appointed. [*Id.* at 3.] Blaine maintains the *Miranda* warning could not cure the purported constitutional violation because by seeking to surrender, he "indicated that he desired to face the charges and we know that assistance of counsel would have been provided at his initial appearance, precluding a counsel-less interrogation." [*Id.* at 4.]

## II.  DISCUSSION

The Sixth Amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  The right to counsel attaches when a prosecution is commenced by the initiation of adversary judicial criminal proceedings, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 198 (2008) (citation omitted); *United States v. Dixon*, 901 F.3d 1322, 1340 (11th Cir. 2018), *cert. denied sub nom. Portela v. United States*, No. 18-6917, 2019 WL 113506 (U.S. Jan. 7, 2019).  The second superseding indictment charging Blaine was returned on October 24, 2018; thus, both at the time Blaine attempted to self-surrender and at the time of his arrest, Blaine had the right to counsel.  He also had a Sixth

5

Amendment right to counsel at any post-indictment interrogation. *Montejo v. Louisiana*, 556 U.S. 787, 786 (2009)

It is "beyond doubt that the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent." *Montejo*, 556 at 786 (citing *Patterson v. Illinois*, 487 U.S. 285, 292 n.4 (1988); *Brewer v. Williams*, 430 U.S. 387, 404 (1977); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Critically, for purposes of the present analysis, a "defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled." *Id*. Typically, the waiver of the Sixth Amendment right to counsel is sufficient if the "defendant is read his *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights . . . even though the Miranda rights purportedly have their source in the *Fifth* Amendment[.]" *Id.*; *see also Patterson*, 487 U.S. at 296 (stating that, in general, "an accused who is admonished with the warnings prescribed by this Court in *Miranda* has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one" (citation omitted)). But "once a defendant clearly invokes his right to counsel, authorities may not interrogate him (1) until counsel is made available,

6

or (2) unless the defendant initiates the contact; any waiver obtained prior to the occurrence of at least one of those events is invalid. *United States v. Rojas*, 553 F. App'x 891, 893 (11th Cir. 2014) (citing *Edwards v. Arizona*, 451 U.S. 477, 485-87 (1981)); *see also Edwards*, 451 U.S. at 486 ("[I]t is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel.")).

As a threshold matter, the Court is not persuaded that agents interfered with Blaine's Sixth Amendment right to counsel by arresting and interrogating him after he requested to self-surrender. Blaine has cited no authority supporting his argument, and the Court has found none. Further, Blaine's assumptions about how his surrender to law enforcement should or would have occurred are not realistic. Blaine assumes that if he had self-surrendered, he would have been whisked away to an initial appearance and law enforcement would not have had an opportunity to interview him prior to the initial appearance. [*See* Doc. 2154 at 7.] Federal Rule of Criminal Procedure 5(a)(1)(A) requires, in general, that all persons who are arrested within the United States to be taken to a magistrate judge "without unnecessary delay." The rule makes no special provision for defendants who report

for arrest.[4] What's more, federal law enforcement officers had no obligation to allow Blaine to surrender at the time and place of his choosing and to the agency of his choosing. Perhaps, if the U.S. Marshals Service had arranged for his surrender, Blaine would have been instructed to surrender to law enforcement officers at a field office or at a police station. Surrender under those circumstances would not have prevented federal agents from questioning him before his initial appearance. Even if he had surrendered at the courthouse steps, the Court does not see how Blaine would have been shielded from any pre-arraignment questioning by law enforcement. In short, Blaine has offered no legal support for his argument, and the factual premises of his arguments are mistaken.

Nevertheless, the Court will also consider whether Blaine's post-arrest interrogation violated his Sixth Amendment right to counsel under a theory that he invoked his right to counsel. The Court readily concludes that he did not. There is no suggestion that, at any time during his interrogation, Blaine invoked his right to

---

[4] Even though Blaine cites Rule 5 in his reply brief [Doc. 2154 at 3], he does not argue or proffer any facts that suggest the arresting agents violated Rule 5. *See also Corley v. United States*, 556 U.S. 303, 322 (2009) (holding that a district court presented with a suppression claim based on failure to promptly present the defendant to a magistrate judge must determine whether the defendant confessed within six hours of arrest, unless a longer delay was reasonable under the circumstances, and the statement was otherwise made voluntarily).

counsel. Blaine could argue that he invoked his right to counsel by communicating his desire to self-surrender, but that argument is foreclosed by Supreme Court precedent that requires a defendant to "unambiguously" request counsel to invoke the right. *Davis v. United States*, 512 U.S. 452, 459 (1994). As the Supreme Court explained:

> [T]he suspect must unambiguously request counsel. As we have observed, "a statement either is such an assertion of the right to counsel or it is not." Although a suspect need not "speak with the discrimination of an Oxford don," he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the officers stop questioning the suspect.

*Id.* (citations omitted). It is not reasonable to expect law enforcement to understand that Blaine was requesting an attorney simply by communicating a willingness to self-surrender.

That argument—that Blaine invoked his right to counsel by requesting to self-surrender—also would fail for an independent reason, namely, that the Supreme Court has rejected the notion that a person can anticipatorily invoke his right to counsel. In *Montejo*, the Supreme Court stated:

> "We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation' . . . ." What matters for *Miranda* and *Edwards* is

9

> what happens when the defendant is approached for interrogation, and (if he consents) what happens during the interrogation—not what happened at any preliminary hearing.

*Montejo*, 556 U.S. at 797 (alteration in original) (citation omitted); *see also United States v. Barbe*r, No. 1:17-CR-219-ELR-AJB-1, 2018 WL 6575889, at *3-4 (N.D. Ga. Nov. 19, 2018) (rejecting argument that defendant's counsel prior invocation of defendant's right to remain silent and right to counsel constituted an anticipatory invocation of his *Miranda* rights), *report and recommendation adopted*, 2018 WL 6574699 (N.D. Ga. Dec. 12, 2018).

The Court's conclusion that Blaine did not invoke his right to counsel is further supported by the Eleventh Circuit's decision in *United States v. Rojas*, 553 F. App'x 891 (11th Cir. 2014).  In *Rojas*, the defendant, who had been indicted on federal drug charges, retained an attorney and then self-surrendered to law enforcement without his lawyer being present. *Rojas*, 553 F. App'x at 892. Once in custody, and still without his attorney, he signed a *Miranda* waiver and gave an incriminating statement to DEA agents.  *Id.*  On appeal, the Eleventh Circuit rejected the defendant's argument that his pre-surrender retention of counsel was an implicit invocation of his right to have an attorney present at all interrogations. *Id.* at 893-94.  The Court of Appeals reasoned:

> Rojas presented no evidence, and does not assert on appeal, that he expressly requested his counsel's presence for the interview. Although he argues that his pre-arrest retention of an attorney was a standing invocation of his right to counsel, the argument fails under *Montejo*. *See Montejo*, 556 U.S. at 789 (holding that just because a defendant is represented by counsel does not mean police are precluded from approaching defendant and seeking defendant's consent to interrogation). Although he attempts to distinguish his case from *Montejo* based on the fact that he retained private counsel, rather than having an attorney appointed for him, the distinction is irrelevant. The Court in *Montejo* emphasized a defendant's ability to clearly assert, and thus sufficiently safeguard, his right to counsel at any critical stage following indictment, and it rejected the notion that the acquisition of counsel affected the ability or rendered it irrelevant. *See id*. at 786. Likewise, Rojas's retention of counsel in no way limited his ability to clearly express a desire to have his attorney present for the post-arrest interview.

*Id.* (parallel citations omitted). It stands to reason, therefore, that if a defendant who is actually represented by counsel does not invoke his right to counsel by self-surrendering for his arrest, a defendant who does not have counsel at all also does not "clearly express a desire to have [an] attorney present for [a] post-arrest interview." *Id*. at 894.

Because Blaine did not assert his right to counsel, the arresting agents "were free to seek a waiver of his rights and initiate questioning." *Rojas*, 553 F. App'x at 894. The question next is whether his waiver was knowing and voluntary. As noted above, Blaine does not challenge the voluntariness of his waiver following his arrest; his challenge instead is based solely on his contention that no waiver was

possible because he had attempted to self-surrender and he was instead arrested. [*See* Doc. 2154 at 8-10 (stating that "the issue here is not Mr. Blaine's waiver; it is the government's manipulation of the U.S. Constitution and Federal Rules of Civil Procedure to pursue improperly incriminating statements and cooperation without the watchful eye and advice of counsel").]  As such, the Court does not—and need not—consider whether Blaine's *Miranda* waiver was knowing and voluntary.

### III.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Blaine's Motion to Suppress Statements from Interview [Doc. 2097] be **DENIED**.  There are no matters pending for Blaine, and the Court has not been advised of any impediments to the scheduling of a trial as to this defendant.  Accordingly, this matter as to this defendant is **CERTIFIED READY FOR TRIAL.**

**IT IS SO RECOMMENDED** this 13th day of February, 2019.

_____
JOHN K. LARKINS III
United States Magistrate Judge